Filed 5/1/23 In re V.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re V.P., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent, v. M.P. et al., Defendants and Appellants. | E080297 (Super.Ct.No. RIJ2100699) OPINION |

APPEAL from the Superior Court of Riverside County. Mona M. Nemat, Judge. Conditionally reversed and remanded with directions.

Landon Villavaso and Elena S. Min, under appointment by the Court of Appeal, for Defendant and Appellant, M.P.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant, M.B.

1

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

M.P. (father) and M.B. (mother) appeal the order of the Riverside County Juvenile Court made at a permanent plan selection hearing held pursuant to section 366.26 of the Welfare and Institutions Code terminating their parental rights as to their child, V.P. (the child).[1] We will conditionally reverse the orders for compliance with section 224.2 and rule 5.481, which are intended to enhance and implement the provisions of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq. (ICWA)).

## BACKGROUND

The child came to the attention of respondent Riverside County Department of Public Social Services (the Department) when mother tested positive for methamphetamine shortly after the child was born. The Department's investigation revealed the child's parents had unresolved substance abuse issues, criminal histories, did not have appropriate provisions for the care and support of the child, and mother had an unresolved mental health history. It took the child into protective custody and filed a section 300 juvenile dependency petition.

At the November 2021 detention hearing, the court noted its receipt of Judicial Council Forms, form ICWA-020, stating the parents were not aware of any Indian ancestry in their families, and found ICWA did not apply to the proceedings. The child was detained in foster care.

_____

[1] All references to statutes herein are to the Welfare and Institutions Code unless otherwise noted. References to rules are to California Rules of Court.

2

The parents did appear at the setting of the contested hearing on jurisdiction, but did not attend when the combined hearing for jurisdiction and disposition went forward a month later. At the conclusion of the hearing, the court again found ICWA inapplicable and found the child came within subdivision (b)(1) of section 300. It adjudged her a dependent of the court, removed her from parental custody, and ordered family reunification services.

The parents failed to participate regularly in reunification services by the time of the contested six-month review hearing held pursuant to subdivision (e) of section 366.2. They appeared when the review was set for a contest, but were not present when the contested hearing resulted in the termination of services and the setting of a section 366.26 hearing to select a permanent plan for the child.

At the section 366.26 hearing, counsel for the parents each stated their client's belief that they shared a strong bond with the child and objected to termination of parental rights, but presented no evidence. The juvenile court found by clear and convincing evidence that it was likely the child will be adopted and ordered termination of the parents' rights. Mother and father appealed.

## DISCUSSION

On appeal, the parents argue the court and the Department failed to comply with the initial inquiry requirements of California's statutes and rules of court designed to implement and enhance ICWA. (25 U.S.C. §§ 1901, et seq.; Welf. & Inst. Code, §§ 224.2, 224.3; rule 5.481.)

3

ICWA was enacted by Congress to protect the best interests of Indian children, and to promote the stability and security of Indian tribes and families in child custody proceedings, including juvenile dependency cases. (25 U.S.C. §§ 1902, 1903(1); 25 C.F.R. § 23.106.) To that end, California law imposes an affirmative and continuing duty on the court and child services agencies such as the Department to inquire whether a child for whom a Welfare and Institutions Code section 300 juvenile dependency petition has or may be filed is or may be an Indian child. (Welf. & Inst. Code, § 224.2, subd. (a).)

As relevant here, when the Department takes temporary custody of a child, California law requires it to ask not only the parents, but also extended family members, whether the child is or may be an Indian child. (Welf. & Inst. Code, § 224.2, subd. (b).) The definition of extended family members includes the child's grandparents, aunts, and uncles. (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c).) Rule 5.481(a)(5) requires the Department to include in its filings on an ongoing basis a detailed description of all inquiries undertaken, and all information it received pertaining to the child's Indian status.

In addition, the juvenile court is required to ask each party when they first appear in the proceeding whether the child has Indian ancestry and to instruct them to inform the court if they subsequently receive information that provides a reason to know the child is an Indian child. (§ 224.2, subd. (c); rule 5.481(a)(2).) This requirement is in addition to that imposed by federal ICWA regulations, which

4

requires the state courts to ask each participant at the commencement in an involuntary child custody proceeding whether the participant knows or has reason to know the child is an Indian child. (25 C.F.R. § 23.107(a).)

The juvenile court's ICWA findings are generally reviewed for substantial evidence, that is, the reviewing court must determine if the finding is supported by reasonable, credible evidence of solid value. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401 (*Josiah T.*).)

Here, at the time of the petition, the Department's social worker did ask the parents about the child's Indian status and reported that their response did not give the worker reason to believe the child was or may be an Indian child. And, at the detention hearing, executed parental notification of Indian status forms (Judicial Council Forms, form ICWA-020) were submitted for each of the parents indicating they had no known Indian ancestry. But the court did not (i) ask the participants at that hearing whether any of them knew or had reason to know the child is an Indian child as required by federal law, or (ii) ask either mother or father about their heritage or instruct them to inform it if they later received information bearing on the child's Indian status as required California law. (25 C.F.R. § 23.107(a); § 224.2, subd. (c); rule 5.481(a)(2)(A) and (B).) It simply found ICWA did not apply to the proceedings.

Thereafter, the court failed to comply with its ongoing and affirmative duty to inquire by asking each participant at every hearing after the detention hearing whether they know or have reason to know the child is an Indian child and to inquiry at each

5

subsequent hearing and to instruct the parties to provide any information they receive that provides reason to know the child is an Indian child. (§224.2, subd. (a); rule 5.481(a)(2)(A), (B).)

Nor is there any indication that the Department complied with its affirmative and ongoing duty of asking the parents and extended family members about the child's Native American status even though maternal and paternal relatives had been identified as early as the detention hearing. For example, the maternal aunt as well as the maternal and paternal grandmothers were identified at the hearing, but there is no evidence that the Department made any effort to ask those relatives about the child's ancestry even though it was required to provide the court on an ongoing basis in its filing a detailed description of those inquiries. (§ 224.2, subds. (a), (b); rule 5.481(a)(5).)

In view of the juvenile court's failure to inquire of any of the participants present at the hearings held in the child's dependency proceedings or to order the parties to provide any information learned that may give reason to know the child comes within ICWA, and the Department's failure to comply with the requirement that it ask extended family members whether the child does or may have Indian ancestry, we agree with the parents that the juvenile court's finding that ICWA did not apply was not sufficiently supported by the facts.[2] (*Josiah T.*, *supra*, 71 Cal.App.5th at p.

---

[2] We are aware of the division in our courts with respect to how ICWA errors are to be reviewed and recognize our Supreme Court is poised to resolve the issue. (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779-782, review granted, Sept. 21, 2022, S275578.)

408 ["the court may not find that ICWA does not apply when the absence of evidence that a child is an Indian child results from [the Department's] inquiry that is not proper, adequate, or demonstrative of due diligence."].)

The affirmative and ongoing duty of the Department and the juvenile court to make ICWA inquiries and the Department's specific obligation to ask extended family members about the child's Indian status are imposed by state, not federal, law. (§ 224.2, subds. (a), (b); rule 5.481.) Accordingly, reversal for failure to comply with California's ICWA inquiry provisions is permitted only if we find the error was prejudicial. (Cal. Const., art. VI, § 13; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 (*Benjamin M.*).)

We do not find the failure to comply with section 224.2 and rule 5.481 to be harmless error. ICWA's purpose is to protect the interests of Indian children and their families as well as the separate and distinct rights of the tribes to intervene in (or exercise jurisdiction over) a custody proceeding involving an Indian child. (25 U.S.C. §§ 1901, 1902, 1911; *In re Isaiah W.* (2016) 1 Cal.5th 1, 7, 9; *In re D.B.* (2022) 87 Cal.App.5th 239, 248.)

Naturally, a tribe cannot exercise its rights to intervene in a child custody proceeding if it does not have notice of it. And, for proper notice to be given, there must be an adequate investigation to determine whether the child who is the subject of the proceeding has or may have Indian ancestry. Compliance with the duty of initial inquiry set forth in section 224.2, subdivisions (a) and (b), and rule 5.481 is crucial to

7

that investigation. As we explained in *Benjamin M.*, though we cannot know what extended family members will say when interviewed by the Department about a child's ancestry, their answers are likely to bear meaningfully on the question whether the child comes within ICWA. (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744-745.)

The Department argues that the order terminating parental rights should be affirmed because subdivision (b) of section 224.2 (the statutory provision requiring it to ask extended family members about the child's Indian ancestry) does not apply if the child was taken into protective custody pursuant to a section 340 protective custody warrant. In support of its claim, it cites the concurring opinion in *In re Adrian L.,* in which Justice Kelley posits subdivision (b) is limited to children taken into custody by either a county welfare department pursuant to section 306 or a county probation department pursuant to section 307. (*In re Adrian L.* (2022) 86 Cal.App.5th 342, 355-359 (conc. opn. of Kelley J.).)

We have no occasion here to concern ourselves with the merits of Justice Kelley's approach for each of two reasons. First, there is insufficient evidence to support the conclusion that the child was taken into custody pursuant to a protective custody warrant. The Department points only to a statement of the juvenile court made when reciting the findings and orders contained in the social worker's report that it "recalls and quashes the previously-issued protective custody warrants for Baby Girl [B]." The record, however, does not contain protective custody warrants issued as to the child. Moreover, the child's circumstances at the time the Department took her

8

into custody did not require a warrant. The child was born on November 4, 2021, and father was present. When the Department received an immediate response referral on November 6, mother had already been discharged from the hospital, the parents had not signed the child's birth certificate, the child was in the neonatal intensive care unit, and the parents had not checked on the child for 32 hours. When there is reasonable cause for a social worker to believe that a child is a person described in subdivision (b) of section 300 and that the child has an immediate need for medical care, section 306 authorizes the worker to take the child into protective custody without a warrant.

Second, even if there was evidence of a warrant, conditional reversal would nevertheless be called for because (i) the juvenile court failed to comply with the initial ICWA inquiry provisions set forth in the Code of Federal Regulations (25 C.F.R. § 23.107(a)), and (ii) the failure of the juvenile court and the Department to comply with subdivisions (a) and (c) of section, 224.2 and rule 5.481(a)(2)(A) and (B).

## DISPOSITION

The order terminating the rights of mother and father as to the child is conditionally reversed. On remand, the juvenile court shall order the Department to comply with the duty of initial inquiry (§ 224.2, subd. (b)) and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the pertinent tribes (25 U.S.C. § 1912(a); § 224.3). If the juvenile court determines that ICWA does not apply, then the court shall reinstate the orders. If the court determines that ICWA

9

does apply, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

McKINSTER

J.

CODRINGTON

J.